UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS GARLAND,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,<br><br>　　　　Defendants. | No. 2:16-cv-1856 JAM AC P<br><br>FINDINGS AND RECOMMENDATIONS |

INTRODUCTION

Plaintiff Thomas Garland is a state prisoner under the custody of the California Department of Corrections and Rehabilitation (CDCR), currently incarcerated at Deuel Vocational Institution (DVI). Plaintiff proceeds pro se and in forma pauperis with his original complaint filed in this civil rights action pursuant to 42 U.S.C. § 1983. See ECF No. 1.

Plaintiff commenced this action in August 2016, while incarcerated at the Sacramento County Jail (SCJ), where he remained until April 27, 2017. Upon screening the original complaint pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. 1915A(a), this court found the allegations therein sufficient to state cognizable Eighth Amendment claims against defendant correctional officers Rashev and Pierce, for the use of excessive force against plaintiff on July 25, 2015, when plaintiff was previously incarcerated at California State Prison Sacramento (CSP-SAC). See ECF Nos. 1, 8.

1

Presently pending is defendants' motion for summary judgment premised on plaintiff's alleged failure to exhaust his administrative remedies before commencing this action. See ECF No. 19. This matter is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the reasons that follow, this court recommends that defendants' motion for summary judgment be denied.

## LEGAL STANDARDS

### I. Legal Standards for Exhausting Administrative Remedies

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross v. Blake, 136 S. Ct. 1850, 1854-55 (June 6, 2016) (quoting 42 U.S.C. § 1997e(a)). "There is no question that exhaustion is mandatory under the PLRA[.]" Jones v. Bock, 549 U.S. 199, 211 (2007) (citation omitted) (cited with approval in Ross, 136 S. Ct. at 1856). The PLRA also requires that prisoners, when grieving their appeal, adhere to CDCR's "critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 91 (2006). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 at 218.

The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones, 549 U.S. at 204. The "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." Rhodes v. Robinson, 621 F.3d 1002, 1004 (9th Cir. 2010); McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam) ("a prisoner does not comply with [the exhaustion] requirement by exhausting available remedies during the course of the litigation").

Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as some remedy remains available. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (original emphasis) (citing Booth

v. Churner, 532 U.S. 731, 739 (2001)). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross, 136 S. Ct. at 1862.

Thus, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Ross, 136 S. Ct. at 1859 (quoting Booth, 532 U.S. at 738). The United States Supreme Court has made clear that The Supreme Court has clarified that there are only "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. These circumstances are as follows: (1) the "administrative procedure . . . operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859-60 (citations omitted). Other than these circumstances demonstrating the unavailability of an administrative remedy, the mandatory language of 42 U.S.C. § 1997e(a) "foreclose[es] judicial discretion," which "means a court may not excuse a failure to exhaust, even to take [special] circumstances into account." Id., at 1856-57.

Failure to exhaust administrative remedies is an affirmative defense that must be raised by defendants and proven on a motion for summary judgment. See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014), cert. denied sub nom. Scott v. Albino, 135 S. Ct. 403 (2014).

If a court concludes that a prisoner failed to exhaust his available administrative remedies, the proper remedy is dismissal without prejudice. See Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

II.   Legal Standards for Summary Judgment

The Ninth Circuit has laid out the analytical approach to be taken by district courts in assessing the merits of a motion for summary judgment based on the alleged failure of a prisoner to exhaust his administrative remedies. As set forth in Albino, 747 F.3d at 1172 (citation and

internal quotations omitted):

> [T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy. . . . Once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. However, . . . the ultimate burden of proof remains with the defendant.

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment ... is satisfied." Id. at 323.

4

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. Moreover, "[a] [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).[1]

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

---

[1] In addition, in considering a dispositive motion or opposition thereto in the case of a pro se plaintiff, the court does not require formal authentication of the exhibits attached to plaintiff's verified complaint or opposition. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment); see also Aholelei v. Hawaii Dept. of Public Safety, 220 Fed. Appx. 670, 672 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary judgment, "which consisted primarily of litigation and administrative documents involving another prison and letters from other prisoners" which evidence could be made admissible at trial through the other inmates' testimony at trial); see Ninth Circuit Rule 36-3 (unpublished Ninth Circuit decisions may be cited not for precedent but to indicate how the Court of Appeals may apply existing precedent).

Matsushita, 475 U.S. at 587 (citations omitted).

In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

In applying these rules, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). However, "[if] a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ." Fed. R. Civ. P. 56(e)(2).

## UNDISPUTED FACTS

The following facts concerning the processing of plaintiff's relevant inmate grievance, Appeal Log No. SAC-B-15-02176, are undisputed:

- On July 30, 2015, while incarcerated at CSP-SAC, plaintiff submitted the subject inmate appeal alleging that he had been subjected to excessive force by defendants Rashev and Pierce on July 25, 2015. Declaration of M. Voong, Chief, CDCR Office of Appeals (Voong Decl.,), ¶ 4; Ex. A.

- First Level Review was bypassed. Id., Ex. A, ECF No. 19-4 at 5-6.[2]

- On September 15, 2015, plaintiff's appeal was denied on Second Level Review. Id.,

---

[2] Page references reflect the electronic pagination accorded by this court's Case Management/ Electronic Case Files (CM/ECF) system, not the internal pagination of the filed documents.

Ex. A, ECF No. 19-4 at 6-11.

- On October 23, 2015, plaintiff was informed in writing by Appeals Coordinator C. Burnett that his appeal had been forwarded to the Office of Appeals for Third Level Review. Id., Ex. A, ECF No. 19-4 at 6, 13.

- On March 22, 2016, Appeals Chief M. Voong issued a notice informing plaintiff that his appeal was "rejected" at Third Level Review pursuant to Cal. Code Regs. tit. 15, § 3084.6(b)(7) & (13) because "incomplete" and "missing necessary supporting documents." Id., Voong Decl., ¶ 5; Ex. B, ECF No. 19-4 at 6, 44. Plaintiff was advised that his appeal was missing the following, id.:

> - Signature and original date submitted is required on form requesting a Third Level Review
> - CDCR Form 1858, Rights and Responsibilities Statement
> - CDCR Form 837, Crime/Incident Report (Parts A, B & C), SAC-FB-15-07-0808

- The March 22, 2016 notice provided the following boiler-plate instructions, id. (emphasis added):

> Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and *resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b).*[3] Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.

- On May 3, 2016, Plaintiff resubmitted his appeal for Third Level Review. Voong Decl., Ex. A, ECF No. 19-4 at 45-6 (copy of envelope and postmark).

- On June 7, 2016, Appeals Chief M. Voong issued a notice informing plaintiff that his

---

[3] These regulations provide in pertinent part (emphasis added):

> Cal. Code Regs. tit. 15, § 3084.6(a): Appeals may be rejected pursuant to subsection 3084.6(b), or cancelled pursuant to subsection 3084.6(c), as determined by the appeals coordinator.
>
> Cal. Code Regs. tit. 15, § 3084.8(b): An inmate or parolee *must submit the appeal within 30 calendar days of:* (1) The occurrence of the event or decision being appealed, or; *(2) Upon first having knowledge of the action or decision being appealed, or; (3) Upon receiving an unsatisfactory departmental response to an appeal filed.*

appeal had been cancelled on Third Level Review because untimely submitted. Voong Decl., ¶ 5; Ex. C, ECF No. 19-4 at 6, 50. The notice provided in pertinent part, id.:

> Your appeal has been cancelled pursuant to [Cal. Code Regs. tit. 15] Section (CCR) 3084.6(c)(10). Failure to correct and return a rejected appeal within 30 calendar days of the rejection.
>
> The Office of Appeals rejected and returned the appeal to the inmate on March 23, 2016 [sic]. The envelope addressed to The Office of Appeals was signed by staff on May 3, 2016[4] and was postmarked on May 4, 2016. The envelope was received in our office on May 10, 2016. This exceeds the time constraints to subject for third level review.
>
> Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted. You have 30 calendar days to appeal the cancellation. Time constraints begin from the date on the screen out form which cancelled your appeal.

- Plaintiff did not file an appeal challenging the cancellation of his Appeal Log No. SAC-B-15-02176. Voong Decl., ¶ 7.
- Plaintiff has submitted no other inmate appeal challenging the subject conduct of defendants. Id.
- Plaintiff filed his complaint in this action on August 5, 2016. See ECF No. 1.

PLAINTIFF'S CONTENTIONS

Plaintiff filed both an opposition and a surreply. Plaintiff failed to sign or verify his opposition, but did verify his surreply. Although a surreply is not authorized as a matter of right under the Federal Rules of Civil Procedure or the Local Rules of this court, defendants have not objected to the court's review of plaintiff's surreply, and the court finds good cause to consider it.

Plaintiff makes the following contentions in opposition to defendants' motion for summary judgment.[5] Plaintiff initially contends that he timely resubmitted his completed appeal

---

[4] Defendants acknowledge that, under the prison mailbox rule, May 3, 2016 is the appropriate date for calculating plaintiff's resubmission of his appeal for Third Level Review. Pursuant to the prison mailbox rule, a document is deemed served or filed on the date a prisoner signs the document and gives it to prison officials for mailing. See Houston v. Lack, 487 U.S. 266 (1988) (establishing prison mailbox rule); Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010) (applying the mailbox rule to both state and federal filings by incarcerated inmates).

[5] Plaintiff's contention that he did not receive the October 23, 2015 notice that his appeal had

8

for Third Level Review within 30 days after March 22, 2016.  Plaintiff directs the court to his April 21, 2016 signature on a "Rights and Responsibility Statement" form.  See ECF No. 19-4 at 15-7.  Plaintiff next contends that he never received notice of the June 7, 2016 cancellation of his appeal, and therefore did not receive notice that he could challenge the cancellation in a new appeal.  Plaintiff also appeals to the court's discretion, asserting that he is a participant in the prison's mental health care system, and lacks familiarity with all pertinent regulations and guidelines.

## ANALYSIS

The analytical framework set forth in Albino requires defendants to bear the initial burden of demonstrating that plaintiff had an available administrative remedy to grieve his claims against defendants Rashev and Pierce, but that plaintiff did not exhaust that remedy.  See Albino, 747 F.3d at 1172.  The court finds that defendants have met this burden, by demonstrating the administrative processing, rejection and ultimate cancellation of plaintiff's relevant appeal, and therefore plaintiff's failure to exhaust his administrative remedies.  Plaintiff does not contest this assessment.

The burden then shifts to plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Albino, 747 F.3d at 1166; see also Ross, 136 S. Ct. at 1858-60.

Plaintiff's initial contention – that he timely resubmitted his completed appeal for Third Level Review within 30 days after March 22, 2016 – fails to satisfy this burden.  Plaintiff's only evidence is his April 21, 2016 signature on a "Rights and Responsibility Statement" form, the completion of which is a precondition for pursuing a criminal complaint against a correctional officer.  See ECF No. 19-4 at 15-7.  This form is unrelated to the administrative appeals process.  Pursuing a criminal complaint against a correctional officer is a distinctly different process than

---

been forwarded to the Office of Appeals for Third Level Review until March 22, 2016, is plainly without merit.  The first critical trigger date, requiring a further response from plaintiff, was March 22, 2016.

9

exhausting administrative remedies as a precondition to filing a civil rights suit. Moreover, defendants have submitted uncontested evidence demonstrating that plaintiff resubmitted his appeal on May 3, 2016, more than 30 days after March 22, 2016. See ECF No. 19-4 at 50; see also id. at 45-6. Plaintiff's subsequent transfer to SCJ on May 10, 2016 did not impact this period. Accordingly, the undisputed evidence establishes that plaintiff's resubmission of his appeal for Third Level Review was untimely by 11 days, thus providing a valid reason for cancelling the appeal. See Cal. Code Regs. tit. 15, § 3084.6(c)(4).[6]

Plaintiff's second contention fares better. Plaintiff has asserted that he never received a copy of the June 7, 2016 notice that his appeal was cancelled, and thus was never informed that he could challenge such cancellation in a new appeal filed within 30 days. Plaintiff suggests that, due to his transfer from CSP-SAC to SCJ on May 10, 2016, the notice may have mistakenly been sent to CSP-SAC or another facility. ECF No. 24 at 1. Plaintiff asks how he can "be held responsible for not responding to a cancellation response that he never knew existed?" ECF No. 28 at 2. Review of the cancellation notice itself does not contradict plaintiff's assertion or theory. Unlike the prior Appeals Office notices that included plaintiff's CSP-SAC address, the June 7, 2016 cancellation notice does not include any address for plaintiff. See ECF No. 19-4 at 50.

Defendants do not dispute the possibility that plaintiff may not have received the June 7, 2016 cancellation notice. Instead they focus exclusively on plaintiff's failure to timely resubmit his rejected appeal for Third Level Review within 30 days after March 22, 2016. See Reply, ECF No. 26 at 3-4. Defendants have not submitted any evidence to refute plaintiff's contention that he did not receive the cancellation notice. The declaration of Appeals Chief Voong states in

---

[6] Plaintiff has not disputed defendants' assumption that plaintiff was informed of the March 22, 2016 rejection notice on the date it was issued. Defendants have relied on the date of issuance for calculation of the resubmission delay, but there is no evidence before the court regarding plaintiff's actual receipt of the March 22 notice. Had plaintiff produced evidence that he received actual notice of the rejection of his appeal sometime after March 22, 2016, it may have affected the analysis. Under Cal. Code Regs. tit. 15, § 3084.8(b), the 30-day period for the resubmission of plaintiff's appeal commenced *either* on the date when plaintiff "*first [had] knowledge* of the action or decision being appealed," id., § 3084.8(b)(2), or "*receiv[ed] an unsatisfactory departmental response* to an appeal filed, id., § 3084.8(b)(3) (emphasis added). In the absence of such evidence, however, the court has accepted the date of notice as undisputed.

10

pertinent part only that "[a] true copy of the cancellation letter sent to Plaintiff regarding appeal log no. SAC-15-02176 is attached as Exhibit C." Voong Decl., ¶ 6, ECF No. 19-4 at 2. The referenced cancellation letter is the June 7, 2016 cancellation notice that does not include plaintiff's address or any other indication that it was actually "sent."

Defendants have failed to demonstrate the existence of a factual dispute concerning plaintiff's non-receipt of the June 7, 2016 cancellation notice regarding his Appeal Log No. SAC-B-15-02176, and consequent lack of notice that he could challenge the cancellation in a new appeal. Accordingly, the court finds that plaintiff has met his burden of coming forward with some evidence showing that the generally available administrative remedies were effectively unavailable to him. Albino, 747 F.3d at 1166. Without receiving such notice, the generally available grievance procedures were unavailable to plaintiff and therefore "so opaque" as to be "practically speaking, incapable of use." Ross, 136 S. Ct. at 1859. Accord, Williams v. Correction Officer Priatno, 829 F.3d 118, 126 (2d Cir. 2016) ("The regulations plainly do not provide guidance on how a transferred inmate can appeal his grievance with the original facility without having received a response."). Although it is clear that plaintiff failed to exhaust his relevant appeal, a further potential remedy remained available to plaintiff which he could have pursued and exhausted had he been provided timely notice. The obligation of an inmate to pursue all "available" remedies before commencing a civil suit, see Brown, 422 F.3d at 935, Ross, 136 S. Ct. at 1862, necessarily includes the opportunity to challenge the cancellation of one's relevant appeal.[7]

Without evidence demonstrating a material fact dispute, this court need not convene an evidentiary hearing. As the undersigned previously noted in a similar case:

---

[7] The handling of plaintiff's appeal is problematic in other ways, which deserve note although they do not affect the exhaustion analysis. First, it is unclear why plaintiff was informed on October 23, 2015 that his appeal had been forwarded to Third Level Review if the appeal was then incomplete. It took five months for plaintiff to be notified that his appeal was not, after all, being considered at the Third Level. The length of that delay is also noteworthy in its own right. The delays in processing plaintiff's appeal were significantly longer than the delay for which plaintiff was penalized. After the initial five-month delay, plaintiff's subsequent appeal of the rejection was cancelled because resubmitted 11 days past the 30-day deadline. It then took another month, until June 7, 2016, for the Appeals Office to issue the cancellation notice.

11

> If exhaustion were an element of plaintiff's claim rather than an affirmative defense, plaintiff might well have to "prove up" his allegations by submitting his evidence to adversary testing and credibility challenges at a pretrial hearing. But plaintiff does not bear the burden of proof as to exhaustion, even when he has assumed and satisfied the burden of production as to the practical unavailability of administrative remedies. Albino, 747 F.3d at 1172. An evidentiary hearing is only necessary where summary judgment is denied on grounds that material factual disputes preclude the entry of summary judgment.

Hammler v. Davis, 2017 WL 735737, at *10, 2017 U.S. Dist. LEXIS 25728 (E.D. Cal. Feb. 23, 2017), report and recommendation adopted, 2017 WL 1093968, 2017 U.S. Dist. LEXIS 42693 (E.D. Cal. Mar. 23, 2017) (Case No. 2:14-cv-2073 MCE AC P).

Because administrative exhaustion is an affirmative defense, and because the evidence presented on summary judgment must be viewed in the light most favorable to the nonmoving party, the record in this case compels the conclusion that defendants have failed to meet their burden on the exhaustion issue. Albino, 747 F.3d at 1176. For these reasons, as in Albino, id., the undersigned concludes that summary judgment on the exhaustion issue should be entered *sua sponte* for plaintiff.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment, ECF No. 19, be denied, and that summary judgment on the issue of exhaustion be entered for plaintiff.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that

////

////

////

////

failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 29, 2017

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE